# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW S. ANDERSEN, | Case No. 1:16-cv-00369-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING (1) DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM; AND (2) DENIAL OF PENDING MOTIONS AS MOOT |
| v. | |
| SCOTT KERNAN, | |
| Defendant. | THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Andrew S. Andersen ("Plaintiff") is a California state prisoner proceeding pro se in this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff filed his complaint on March 17, 2016. He names Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), as the sole Defendant.

**A.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid,

---
[1] Plaintiff paid the filing fee on April 29, 2016.

1

the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.   SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Valley State Prison in Chowchilla, California.

In August 2006, Plaintiff was sentenced to fifteen years to life, with the possibility of parole. He was convicted on one count under California Penal Code 288(a) (lewd or lascivious act with a child under the age of fourteen).

Plaintiff requested castration in October 2007, but it was denied absent a court order.

Plaintiff had his initial Board of Parole Hearing ("BPH") on November 17, 2015. After consideration of the evidence, the panel deemed him unsuitable for parole because he did not show

strong enough evidence of rehabilitation.  Specifically, the panel noted that Plaintiff (1) had not done the level of self-help necessary; (2) was not in treatment; (3) needed to "seriously consider" the advice and instruction in the Comprehensive Risk Assessment ("CRA") regarding formalized treatment.[2]

Prior to this, in June 2011, Plaintiff had proposed a self-funded program managed by trained inmates to the BPH, Defendant and others.  Plaintiff proposed the program so that the state did not have to spend money on the program, and he found volunteer psychologists willing to oversee the program.

Plaintiff did not receive a response to his proposal from the Associate Warden and he submitted a group appeal.  On September 9, 2011, Plaintiff was placed in Ad-Seg and given a CDC-115 for "Attempted Theft of State Property for the Amount of $135,852.00," which was the estimated start-up cost of the program should the state have to hire an outside psychologist.  ECF No. 1, at 9.  The CDC-115 referenced the group appeal as evidence.  On November 26, 2011, the Senior Hearing Officer dismissed the CDC-115.[3]

Also in June 2011, Plaintiff submitted an appeal against Mental Health for not providing the treatment necessary for life inmates to prepare for the criteria of the BPH.  It was denied at all levels.

On July 29, 2011, Plaintiff filed an action in the Northern District requesting an injunction to order the state to provide the means to meet BPH criteria.  The request was denied because, at the time, Plaintiff had not yet been before the BPH and therefore did not have standing.

In May 2012, Plaintiff was transferred to the California Correctional Institution.  The waiting lists for any group or vocational program were very long, and he chose not to sign up for self-help groups that were faith-based.  Plaintiff had two sessions with a psychologist, but at the third session, she told Plaintiff that she could no longer work with him due to a memo from her superiors.

///

///

---

[2] Even though Plaintiff's pages are consecutively numbered and do not appear out of order, it appears that text is missing from the bottom of page six and/or the top of page seven. ECF No. 1, at 8-9. The Court relied on Plaintiff's exhibits to complete the text on page six, and used the context to gather a general idea of Plaintiff's allegations at the top of page seven.

[3] The CDC-115 is the subject of another federal court action alleging that the Assistant Warden retaliated against Plaintiff for pushing a rehabilitation program.

In October 2012, Plaintiff was transferred to Valley State Prison. He was placed at the top of the Electrical/Optical Fiber vocational waiting list, but to date, he has not been assigned to the program.

In February 2013, Plaintiff was hired as a Literacy Tutor. It took about a year before the first self-help groups were available. As the groups were formed, Plaintiff signed up for many. He eventually learned that because he works weeknight hours, he would not be ducated for self-help groups. Plaintiff could only participate in Mental Health groups, and he did participate in a Coping Skills Group.

Since August 2014, Plaintiff has been on the waiting list for Cognitive-Behavioral Based Criminal Thinking, a program run by the Rehabilitation Division of CDCR.

Plaintiff has spoken to the Valley State Prison supervising psychologist about the lack of therapy programs for sex offenders, and he was told that the regulations do not permit sex offender therapy.

Plaintiff explains that life term inmates are not given priority over non-life inmates for access to groups and programs required by the BPH. Self-help groups are usually run by inmates, without quality assurance and without an accreditation procedure. Plaintiff does not know of any self-help groups for sex offenders.

Plaintiff also contends that there are no sex offender programs in CDCR available to help him prepare him for the BPH criteria. There are no sex offender yards, as there are in other states. The prisons that Plaintiff has been housed at do not have literature, services or other resources available for Plaintiff to prepare for the BPH.

At the next hearing, the Panel expects Plaintiff to tell them about his crime. He needs to come to terms with his crime, accept responsibility, explore the nature of the relationship with his daughter and be involved in a program that "has to do with [his] need to be in power, or control, over children." ECF No. 1, at 12.

Plaintiff believes that CDCR has the authority to run a cognitive-behavioral treatment program to provide evidence-based treatment services to inmates. He states that it is well known that life inmates are routinely denied parole by the BPH because the inmate lacks insight into his

1  crime, and that the BPH recommends programs and therapy to gain that insight.  However, CDCR
2  does not believe that it is constitutionally obligated to provide the programs that the BPH demands in
3  order for life inmates to have an opportunity to gain their freedom.

4  Plaintiff argues that he needs affirmative assistance from the state to gain the necessary
5  treatment for parole.  Because the Panel held that Plaintiff has an unstable social history, he can
6  never meet the criteria of the BPH because he cannot show evidence of a "lengthy period of
7  rehabilitation."  ECF No. 1, at 16.

8  In 2015, CDCR created a sex-offender treatment program for non-lifers at CSATF.  Plaintiff
9  does not qualify for the program.  Plaintiff argues that even if he qualified, a transfer would be
10 adverse to other factors necessary at the next hearing, i.e., he would lose rehabilitation books and his
11 job.  He also argues that the program was not designed to meet BPH requirements.

12 Plaintiff believes that CDCR can remedy the situation by placing Plaintiff into the program
13 with modifications to the program that meet the BPH requirements.  He states that he must also be
14 allowed to keep his existing and future rehabilitation materials.

15 Based on these facts, Plaintiff alleges a violation of the due process clause and the Eighth
16 Amendment.  He seeks declaratory and injunctive relief.

17 **C.    DISCUSSION**

18 In some situations, a prisoner may challenge parole procedures in a civil rights action rather
19 than a habeas action.  In Wilkinson v. Dotson, 544 U.S. 74, 76 (2005), the Court held that a prisoner
20 may bring a section 1983 action for declaratory and injunctive relief challenging the constitutionality
21 of state parole procedures, and is not always required to seek relief via a federal habeas petition.  See
22 also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997) (inmates' challenge to a sex offender
23 treatment program as a violation of the ex post facto clause and their due process rights was
24 appropriate under section 1983 because victory could only result in "a ticket to get in the door of the
25 parole board . . ." and did not undermine the validity of convictions or continued confinement.).

26 Here, Plaintiff challenges the parole procedures and seeks declaratory and injunctive relief.
27 Success on his claims would not directly impact the length of his sentence, and his claims are
28 therefore proper in a section 1983 action.

1. <u>Due Process</u>

Under the Due Process Clause of the Fourteenth Amendment, the government cannot deprive a person of "life, liberty, or property" without due process of law. U.S. Const. amend, XIV. A due process claim, whether procedural or substantive, exists only where a constitutionally protected liberty or property interest is at stake. <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977).

A liberty interest may arise from either the Constitution itself or from state law. <u>Meachum v. Fano</u>, 427 U.S. 215, 225-26 (1976). A liberty interest may arise from the Constitution itself "by reason of guarantees implicit in the word 'liberty.'" <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).

Here, as Plaintiff implicitly acknowledges, prisoners have no liberty interest in rehabilitative programs arising directly from the Constitution. <u>See</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9 (1976) (finding no due process right in "eligibility for rehabilitative programs" in the federal prison system); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir.1985) (finding that there "is no constitutional right to rehabilitation" and thus no right to access rehabilitative services). Moreover, the Ninth Circuit has rejected a right to sex offender treatment arising directly from the Constitution. <u>See</u> <u>Balla v. Idaho State Bd. of Corr.</u>, 869 F.2d 461, 470 (9th Cir.1989).

Rather, Plaintiff contends that he has a "state-created liberty and property interest in rehabilitation. . ." ECF No. 1, at 18. He argues that the state, "through the BPH, statutes and regulations, created a liberty and property interest in rehabilitation. . ." ECF No. 1, at 18.

Indeed, a state may create a liberty interest through statutes, prison regulations, and policies. <u>Chappell v. Mandeville</u>, 706 F.3d 1052, 1063 (9th Cir.2013). Under <u>Sandin</u>, the state liberty interest in question must be one of "real substance." <u>Sandin v. Connor</u>, 515 U.S. at 472, 477-87 (1995). "Real substance" means freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," <u>id</u>. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," <u>id</u>. at 487. After <u>Sandin</u>, the language of state statutes and regulations play little, if any, role in determining the existence of a protected, state-created liberty interest. <u>See</u> <u>Wilkinson</u>, 545 U.S. at 222-23 ("the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of

6

confinement is not the language of the regulations regarding those conditions but the nature of those conditions 'in relation to the ordinary incidents of prison life.'").

Whether there exists a state-created liberty interest in access to sex offender treatment programs turns on the relationship between the program and suitability for parole. Where state statutes predicated the inmate's sentence on sex offender treatment, a liberty interest may be found. See eg. Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002) (because New Jersey's prior statutory scheme "predicate[d] the term of his sentence on his response to treatment," deprivation of treatment imposed an "atypical and significant hardship.").

By contrast, parole suitability in California does not require participation in sex-offender treatment programs.[4] Section 2432 of Title 15 of the California Code of Regulations specifically pertains to parole for sex offenders, but it requires the panel to "consider the information described in Section 2281(b)." Section 2281(b) states as follows:

> Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Indeed, the Northern District came to the same conclusion in Plaintiff's prior action, Andersen v. Beard, 11-03752 YGR (PR), filed in 2011. In his Second Amended Complaint in that action, he alleged that defendants violated the Due Process Clause "by not providing [him] a treatment program that is adequate and effective with the reasonable objective of rehabilitation and that meets the rehabilitation requirements of the BPH." Andersen v. Beard, 2014 WL 232108, at *2 (N.D.Cal. 2014). In screening his complaint, the court noted that Plaintiff had a standing issue because he had not yet been denied parole. However, the court also explained:

---

[4] In his allegations, Plaintiff suggests that the BPH denied parole because he lacked treatment. However, a state-created liberty interest would not be created by Plaintiff's specific circumstances. Rather, the Court must look to statutes, prison regulations, and policies for the creation of such an interest.

7

>Second, Plaintiff possesses no constitutional right to participate in rehabilitation programs while incarcerated, Hoptowit v. Ray, 778 F.2d 527, 530 (9th Cir. 1985) (no right to vocational course for rehabilitation); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (same), nor is his participation in such programs statutorily required for parole suitability. See Cal.Code Regs tit. 15, § 2281 (programming only one of several factors to be considered when determining suitability for parole). Accordingly, Plaintiff's due process claims relating to the CDCR's lack of rehabilitation programs for lifers are DISMISSED.

Id. at *3.

For these reasons, the Court finds that Plaintiff cannot state a due process claim. This cannot be cured by amendment.

    2.    Eighth Amendment- Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Plaintiff contends that the State of California withholds the means through which he can meet the parole suitability criteria, therefore condemning him to life without the possibility of parole "due

to [his] unstable social history."[5]  ECF No. 1, at 18.  However, as explained above, there is no constitutional right to rehabilitation.  Hoptowit, 682 F.2d at 1255.

Moreover, participation in rehabilitation programs is not a requirement for parole in California.  Thus, contrary to his conclusion, the state has not precluded the possibility of release by not providing the treatment Plaintiff would like.  This is not the type of extreme deprivation necessary to state a conditions of confinement claim.  Rhodes v. Chapman, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments.").

Therefore, Plaintiff cannot state an Eighth Amendment claim.  This cannot be cured by amendment.

### 3. Linkage

As explained above, section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1949; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Therefore, Plaintiff must link the named defendants to the participation in the violation at issue.  Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Some

---

[5] Many of Plaintiff's allegations point to his inability to participate in programs, rather than the State's refusal to provide them.  For example, he states that he chose not to sign up for self-help faith-based groups after his transfer to the California Correctional Institution, that he could not participate in self-help groups because of his work hours and that he is on the waitlist for various programs.  Indeed, Plaintiff believes that the situation can be remedied by allowing him to participate in an *already-existing* program, with modifications.

culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991).

Plaintiff names Scott Kernan, Secretary of CDCR. He does not, however, link him to any factual allegations.

### D. FINDINGS AND RECOMMENDATIONS

For the reasons explain above, Plaintiff does not state any cognizable claims for relief. Given the nature of the deficiencies, the Court finds that Plaintiff cannot cure the issues through amendment. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, the Court recommends that this action be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim, and that all pending motions (Documents 7 and 11) be DENIED AS MOOT.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 24, 2016**            /s/ Sandra M. Snyder
                                   UNITED STATES MAGISTRATE JUDGE